| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Jason Norwood<br>Special Agent: John Snowa | Telephone: (313) 226-9100<br>Telephone: (313) 226-0500 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.
Jason Robert

Case No. 25-mj-30161

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 18, 2025__ in the county of __St. Clair County__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(b)(1)(A) | Possession with the intent to distribute methamphetamine. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

John Snowa, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: March 19, 2025

_____
Judge's signature

City and state: Detroit, MI

Hon. Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, John Snowa, Special Agent with Homeland Security Investigations ("HSI"), being first duly sworn, on oath, hereby depose and state as follows:

### *Introduction and Agent Background*

1. I make this affidavit in support of a criminal complaint charging Jason ROBERT with possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

2. I am employed as a Special Agent ("SA") with HSI and have served in this capacity since 2019. I am currently assigned to the HSI Border Enforcement Security Task Force ("BEST") in Port Huron, Michigan, and have served in this group since 2020. Prior to my current assignment to HSI, I was assigned as a Police Officer and Detective with Henrico County Police Division in Henrico County, Virginia from 2007 until 2019.

3. I have received specialized training for drug trafficking. I have participated in numerous narcotics investigations involving the violation of controlled substance laws, which have led to the arrest of numerous individuals. As part of these investigations, I have conducted and participated in numerous investigations that have resulted in the seizure of methamphetamine, cocaine, fentanyl, heroin, synthetic drugs, and other illegal controlled substances. I am familiar with and have participated in the normal methods of investigation,

1

including but not limited to: undercover operations, visual and video surveillance, questioning of witnesses, controlled deliveries, use of search and arrest warrants, management and use of informants, and electronic intercepts.

4. I currently work in conjunction with other federal, state, and local law enforcement agencies investigating, in part, illegal drug trafficking of controlled substances throughout the United States and abroad. As such, I am a "federal law enforcement officer," within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for federal criminal offenses and make requests for warrants.

5. This affidavit is made for the purpose of establishing probable cause for a criminal complaint against Jason ROBERT for the crime of possession with the intent to distribute methamphetamine, as set forth below and does not include all of my knowledge on this matter. The following factual information is based on my personal knowledge, the knowledge of Customs and Border Protection ("CBP") Officers, and other law enforcement officers.

### *Probable Cause*

6. On March 18, 2025, at 5:46 a.m., CBP officers located at the Blue Water Bridge in Port Huron, Michigan, encountered two subjects, traveling in an Ontario plated recreational vehicle ("RV"). In the ordinary course of their duties, CBP

2

officers identified the two individuals, via their Canadian passports. Officers identified the driver as Jason ROBERT. ROBERT was accompanied by a female passenger. Law enforcement verified that ROBERT and the female passenger are Canadian citizens.

7. CBP officers conducted a search of law enforcement databases and found suspected criminal activity involving the female passenger. Based on this information, the CBP officers directed ROBERT to drive to the secondary inspection at BWB. At approximately 6:00 a.m., CBP officers started the secondary inspection.

8. During the secondary inspection, CBP officers questioned ROBERT, a second time, about the purpose of travel within the United States, who stated they were traveling to Starlite RV Park in Okeechobee, Florida. During questioning, ROBERT told officers that he recently purchased the RV. ROBERT and the female passenger admitted ownership to the everything inside of the RV. ROBERT stated they had clothing and tools in the RV, in case the vehicle broke down. CBP officers asked ROBERT and the female if they had any prescription medications. ROBERT stated he was diabetic and had medication in the refrigerator. CBP officers then asked ROBERT and the female passenger if they had any narcotics, drugs, or products containing THC. Both ROBERT and the female passenger replied "no."

9. CBP officers directed ROBERT and the female passenger to empty everything from their pockets onto a counter. The female passenger emptied her pockets. No illegal items were found. ROBERT emptied his pockets, and no illegal items were initially found. However, a CBP officer heard a bag or wrapper noise coming from inside ROBERT's front sweatshirt pocket. The CBP officer again directed ROBERT to empty the contents of his pockets, and as ROBERT reached into his front sweatshirt pocket the CBP officer observed a small sandwich-sized bag containing a white substance. The CBP Officer directed ROBERT to remove the bag from his pocket and place it on the counter. ROBERT removed the bag from his front sweatshirt pocket and placed it on the counter. The bag contained white pills with the inscription of "ICE" on them.

10. CBP officers weighed the bag containing the white pills and field tested its contents, utilizing a TruNarc device. Per TruNarc testing, the pills indicated positive for the presence of methamphetamine. The bag and its contents weighed 8.9 grams.

11. CBP Officers then searched the RV and located two additional pill bottles containing additional identical white pills, with the inscription "ICE" on them. CBP officer located the first bottle, inside of a bag containing men's clothing. The bottle included a prescription label with ROBERT's name. Inside the bottle, officers discovered multiple pills. CBP officers weighed the bottle and

4

field tested its contents, utilizing a methamphetamine reagent system field test kit. Per testing, the pills indicated positive for the presence of the methamphetamine. The weight of the bottle and its contents was 33.5 grams. CBP officers located the second bottle. The bottle was labeled as magnesium pills, but inside, CBP Officers found additional identical "ICE" pills, mixed in with what appeared to be magnesium pills. The white "ICE" pills were separated from the magnesium pills by CBP Officers, placed in a pill bottle and weighed it. CBP officers weighed the bottle and field tested its contents, utilizing a methamphetamine reagent system field test kit. Per testing, the pills indicated positive for the presence of the methamphetamine. The weight of the bottle and the white pills was 80.7 grams.

12. After being contacted by CBP, your Affiant and Task Force Officers ("TFOs") with HSI BEST Port Huron responded to the BWB to conduct further investigation.

13. Your Affiant and the TFOs ordered the RV towed from the BWB to the impound lot used by Port Huron Police Department. During an inventory search of the RV, your Affiant located two additional pill bottles containing identical white "ICE" pills. The first bottle that I discovered was located inside the medicine cabinet above the bathroom sink inside of the RV. The bottle included a label titled, "Complete Probiotic." However, upon further inspection

5

of its contents, the bottle contained white "ICE" pills. Law enforcement weighed the bottle and it contents, and field tested the pills, utilizing the TruNarc device. Per TruNarc testing, the pills initially indicated positive for the presence of "caffeine." Law enforcement conducted an additional field test, utilizing a methamphetamine reagent system field test kit, which indicated positive for the presence of methamphetamine. The bottle and its contents weighed approximately 103.3 grams. I discovered a second bottle, inside the medicine cabinet above the bathroom sink inside of the RV. The second bottle included a label, titled "Ibuprofen." However, upon further inspection of its contents, the bottle contained white "ICE" pills. Law enforcement weighed the bottle and its contents, and field tested the pills, utilizing the TruNarc device. Per TruNarc testing, the pills indicated positive from the presence of "caffeine." Law enforcement conducted an additional field test, utilizing a methamphetamine reagent system field test kit, which indicated positive for the presence of methamphetamine. The bottle and its contents weighed approximately 103.7 grams.

14. In total, the bottles, plastic bag, and their contents contained an approximate aggregate weight of 330 grams, which contained pills that tested positive for the presence of methamphetamine. Based on my training and experience, the street value of methamphetamine is approximately $25 to $40 per gram. For this

6

reason, the street value of the methamphetamine seized is worth between $8,250 to $13,200.

15. Based on my training and experience, methamphetamine packaged for sale is often stored in different containers. Additionally, based on my training and experience, the total quantity of methamphetamine discovered in the RV and on ROBERT's person was inconsistent with personal use and indicative of drug trafficking.

16. At the request of HSI, ROBERT was transported by Port Huron Police Department to the St. Clair County Jail. Prior to ROBERT being transported by the Port Huron Police officer, the transport cruiser was searched by the transporting officer. At that time, no illegal controlled substances were in located in the cruiser. However, upon ROBERT's arrival at the jail, and removal from the vehicle, the officer discovered a small bag containing white powder where ROBERT was seated. Law enforcement weighed the bag and tested it contents, utilizing the TruNarc device. Per TruNarc testing, the powder indicated positive for the presence of cocaine. The bag and its contents weighed approximately 2 grams.

## *Conclusion*

17. Based on the foregoing information, Affiant believes probable cause exists for a criminal complaint for Jason ROBERT for possession with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

I declare under the penalty of perjury that the above facts and circumstances are true and correct to the best of my knowledge and belief.

Respectfully submitted,

John Snowa
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence and/or by reliable electronic means.

Honorable Anthony P. Patti
United States Magistrate Judge

March 19, 2025